# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| LORALIE NOLET, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>vs.<br><br>ALLTRAN FINANCIAL, LP,<br><br>    Defendant. | Case No.: 17-cv-1611<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Loralie Nolet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included an agreement to defer payment.

6. Defendant Alltran Financial, LP ("Alltran") is a debt collection agency with its principal place of business located at 5800 North Course Drive, Houston, Texas 77072.

7. Alltran is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Alltran is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Alltran is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. 427.103(3).

## FACTS

9. On or about January 4, 2017, Alltran mailed a debt collection letter to Nolet regarding an alleged debt, allegedly owed to "Citibank, N.A. CITI MASTERCARD" (Citibank). A copy of this letter is attached to this complaint as Exhibit A.

10. The alleged debt identified in Exhibit A is an alleged credit card account, allegedly owed to Citibank, and used only for personal, family or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first communication Nolet received from Defendant.

14. Exhibit A contains the statutory validation notice that is required by the FDCPA, 15 U.S.C. § 1692g:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within the thirty day period that the debt, or any portion thereof, is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor.

2

Exhibit A.

15. <u>Exhibit A</u> states the following:

> Creditor: Citibank, N.A.
>           CITI MASTERCARD
> Account: XXXXXXXXXXXX5227
> Alltran ID: ■■■5924
> Total Balance as of January 4, 2017: $2,406.91
> Minimum Payment Due as of January 4, 2017: $882.69
> Telephone: 877-614-9420, ext 8613
> Partial Account Number for Your Security

Exhibit A.

16. <u>Exhibit A</u> further states:

> We want to help you resolve this account. If you wish to discuss your account, please call James Stauber at 877-614-9420 extension 8613, so we may assist you. As of the date of this letter you owe the amount stated above. Because your account continues to accrue interest and may accrue late and other charges on all owed balances pursuant to your agreement with your creditor, the Total Balance on the date you pay may be greater. If you pay the Total Balance above, an adjustment may be necessary after we receive your payment. If so, we will contact you. For further information about your balance, please call your account representative.

Exhibit A.

17. <u>Exhibit A</u> informed Nolet her total balance, as of January 4, 2017, was $2,406.91, with a minimum payment due of $882.69.

18. <u>Exhibit A</u> further informed Nolet "Because your account continues to accrue interest and may accrue late and other charges . . . the Total Balance on the date you may be greater." <u>Exhibit A</u>.

19. On or about February 8, 2017, Alltran mailed a debt collection letter to Nolet regarding the same alleged debt, allegedly owed to Citibank. A copy of this letter is attached to this complaint as <u>Exhibit B</u>.

20. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

3

21. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter used by Defendant to attempt to collect alleged debts.

22. <u>Exhibit B</u> contains the following:

```
Date: February 8, 2017
Creditor: Citibank, N.A.
          CITI MASTERCARD
Account: XXXXXXXXXXXX5227
Alltran ID: ▓▓▓▓5924
Total Balance as of February 8, 2017: $2,406.91
Telephone: 888-739-0745, ext 4987
Partial Account Number for Your Security
```

<u>Exhibit B</u>.

23. <u>Exhibit B</u> informed Nolet that, as of February 8, 2017, the balance of her alleged Citibank account was $2,406.91.

24. On or about February 23, 2017, Alltran mailed a debt collection letter to Nolet regarding the same alleged debt, allegedly owed to Citibank. A copy of this letter is attached to this complaint as <u>Exhibit C</u>.

25. Upon information and belief, <u>Exhibit C</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Upon information and belief, <u>Exhibit C</u> is a form debt collection letter used by Defendant to attempt to collect alleged debts.

27. <u>Exhibit C</u> contains the following:

```
Date: February 23, 2017
Creditor: Citibank, N.A.
          CITI MASTERCARD
Account: XXXXXXXXXXXX5227
Alltran ID: ▓▓▓▓5924
Total Balance as of February 23, 2017: $2,406.91
Telephone: 888-739-0745, ext 4987
Partial Account Number for Your Security
```

<u>Exhibit C</u>.

4

28. Exhibit C informed Nolet that, as of February 23, 2017, the balance of her alleged Citibank account was $2,406.91.

29. The balance of Nolet's alleged Citibank account did not change between January 4, 2017, when Defendant sent Exhibit A, and February 23, 2017, when Defendant sent Exhibit C.

30. Nolet did not make any payment to the alleged account between January 4, 2017, when Defendant sent Exhibit A and February 8, 2017, when Defendant sent Exhibit B.

31. Nolet did not make any payment to the alleged account between February 8, 2017, when Defendant sent Exhibit B, and February 23, 2017, when Defendant sent Exhibit C.

32. Upon information and belief, Defendant was not authorized to re-calculate and add interest to Nolet's alleged Citibank account.

33. Upon information and belief, Defendant's statement in Exhibit A that Plaintiff Nolet's account "continues to accrue interest," is a false statement.

34. Upon information and belief, the reference to "Interest" is a threat to add interest to Plaintiff's and Class Members' alleged debts, despite the fact that Alltran was not authorized to do so.

35. Defendant's tactic of threatening to add interest to the alleged debt is a material violation of the FDCPA. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). Defendant's representation that interest continues to accrue encourages the unsophisticated consumer to pay to avoid ever-increasing balances, when in actuality, the balance is not increasing.

36. Plaintiff was confused by Exhibits A-C.

37. Plaintiff had to spend time and money investigating Exhibits A-C, and the consequences of any potential responses to Exhibits A-C.

38. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of <u>Exhibits A-C</u>.

## THE FDCPA

39. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to
6

encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

40. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

41. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

42. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of --- the character, amount, or legal status of any debt."

43. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

44. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

45. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

46. 15 U.S.C. § 1692f(1) specifically prohibits the " collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

47. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

## THE WCA

48. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

49. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

50. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

8

51. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

52. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

53. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

54. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

55. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

9

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

56. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

57. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

58. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

59. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

60. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

61. The statement in Defendant's letter that Plaintiff's account was accruing interest is false, misleading, and confusing.

62. The creditor did not authorize Defendant to add any interest to Plaintiff's account.

63. Defendant stated the character and amount of Plaintiff's debt in a misleading way and threatened to add interest even though it did not intend to so and was not authorized to do so.

64. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g.

## COUNT II – WCA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. The statement in Defendant's letter that Plaintiff's account was accruing interest is false, misleading, and confusing.

67. Defendant was not authorized to add any interest to Plaintiff's account.

68. Defendant was not actually adding any interest to Plaintiff's account.

69. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

70. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibits A-C to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between November 20, 2017 and November 20, 2017, (e) that was not returned by the postal service.

71. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

72. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

73. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

11

74. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

75. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

76. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 20, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com